UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JANINA SUAREZ, Individually and on behalf of
others similarly situated,

                   Plaintiff,

         -against-

TOORAJ ZAHEDI, MD,

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**JURY TRIAL DEMANDED**

**ANSWER AND
COUNTERCLAIMS**

Civil Action No.   21-CV-1887
(AMD)(JRC)

Defendant, TOORAJ ZAHEDI, MD, by his attorneys, Garfunkel Wild, P.C., for his

Verified Answer to the Plaintiff JANINA SUAREZ's Verified Complaint, dated April 8, 2021 (the

"Complaint"), alleges as follows:

**NATURE OF ACTION**

1.     Neither admits nor denies the statements made in paragraph 1 of the Complaint as

they assert a legal conclusion to which no response is necessary.  To the extent that the statements

made in paragraph 1 of the Complaint contain any allegations to which a response is needed,

Defendant denies the allegations made in paragraph 1 of the Complaint.

2.     Neither admits nor denies the statements made in paragraph 2 of the Complaint as

they assert a legal conclusion to which no response is necessary.  To the extent that the statements

made in paragraph 2 of the Complaint contain any allegations to which a response is needed,

Defendant denies the allegations made in paragraph 2 of the Complaint.

3.     Neither admits nor denies the statements made in paragraph 3 of the Complaint as

they assert a legal conclusion to which no response is necessary.  To the extent that the statements

made in paragraph 3 of the Complaint contain any allegations to which a response is needed, Defendant denies the allegations made in paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4.     Neither admits nor denies the statements made in paragraph 4 of the Complaint as they assert a legal conclusion to which no response is necessary.  To the extent that the statements made in paragraph 4 of the Complaint contain any allegations to which a response is needed, Defendant denies the allegations made in paragraph 4 of the Complaint.

5.     Neither admits nor denies the statements made in paragraph 5 of the Complaint as they assert a legal conclusion to which no response is necessary.  To the extent that the statements made in paragraph 5 of the Complaint contain any allegations to which a response is needed, Defendant denies the allegations made in paragraph 5 of the Complaint.

## THE PARTIES

6.     Denies knowledge and information sufficient to form a belief as to the truth of the allegations made in paragraph 6 of the Complaint.

7.     Admits the allegations made in paragraph 7 of the Complaint.

8.     Admits the allegations made in paragraph 8 of the Complaint

## FACTUAL ALLEGATIONS

9.     Admits the allegations made in paragraph 9 of the Complaint

10.     Admits the allegations made in paragraph 10 of the Complaint.

11.     Denies the allegations made in paragraph 11 of the Complaint.

12.     Denies the allegations made in paragraph 12 of the Complaint.

13.     Denies the allegations made in paragraph 13 of the Complaint.

14.     Admits the allegations made in paragraph 14 of the Complaint.

15.     Admits the allegations made in paragraph 15 of the Complaint.

16.     Denies the allegations made in paragraph 16 of the Complaint, except admits that Plaintiff is a former employee of Defendant.

17.     Neither admits nor denies the statements made in paragraph 17 of the Complaint as they assert a legal conclusion to which no response is necessary.  To the extent that the statements made in paragraph 17 of the Complaint contain any allegations to which a response is needed, Defendant denies the allegations made in paragraph 17 of the Complaint.

18.      Admits the allegations made in paragraph 18 of the Complaint.

19.     Denies the allegations made in paragraph 19 of the Complaint.

20.     Denies the allegations made in paragraph 20 of the Complaint.

21.     Admits the allegations in paragraph 21.

22.     Denies the allegations made in paragraph 22 of the Complaint.

23.     Denies the allegations made in paragraph 23 of the Complaint.

24.     Admits the allegations made in paragraph 24 of the Complaint.

25.     Denies the allegations made in paragraph 25 of the Complaint.

26.     Denies the allegations made in paragraph 26 of the Complaint.

27.     Denies the allegations made in paragraph 27 of the Complaint.

28.     Denies the allegations made in paragraph 28 of the Complaint.

29.     Denies the allegations made in paragraph 29 of the Complaint.

30.     Denies the allegations made in paragraph 30 of the Complaint, except admit only that Defendants maintain employment records including records of Plaintiff's hours allegedly worked, which hours were misreported by Plaintiff and are fraudulent.

31.     Denies the allegations made in paragraph 31 of the Complaint.

32.     Denies the allegations made in paragraph 32 of the Complaint.

33.     Denies the allegations made in paragraph 33 of the Complaint.

34.     Denies the allegations made in paragraph 34 of the Complaint.

35.     Denies the allegations made in paragraph 35 of the Complaint.

36.     Denies the allegations made in paragraph 36 of the Complaint.

37.     Denies the allegations made in paragraph 37 of the Complaint.

38.     Denies the allegations made in paragraph 38 of the Complaint.

39.     Denies the allegations made in paragraph 39 of the Complaint.

40.     Denies the allegations made in paragraph 40 of the Complaint.

41.     Denies the allegations made in paragraph 41 of the Complaint.

## FLSA COLLECTIVE ACTION CLAIMS

42.     Denies the allegations made in paragraph 42 of the Complaint.

43.     Denies the allegations made in paragraph 43 of the Complaint.

44.     Denies the allegations made in paragraph 44 of the Complaint.

45.     Denies the allegations made in paragraph 45 of the Complaint.

46.     Denies the allegations made in paragraph 46 of the Complaint.

## RESPONSE TO PLAINTIFF'S FIRST CAUSE
## OF ACTION AGAINST DEFENDANT

47.     In response to paragraph 47 of the Complaint, Defendant repeat and realleges all of the statements above as if fully set forth at length herein.

48.     Denies the allegations made in paragraph 48 of the Complaint.

-4-

6087496v.9

49.     Denies the allegations made in paragraph 49 of the Complaint.

50.     Denies the allegations made in paragraph 50 of the Complaint.

## RESPONSE TO PLAINTIFF'S SECOND CAUSE
## OF ACTION AGAINST DEFENDANT

51.     In response to paragraph 51 of the Complaint, Defendant repeats and realleges all of the statements above as if fully set forth at length herein.

52.     Denies the allegations made in paragraph 52 of the Complaint.

53.     Denies the allegations made in paragraph 53 of the Complaint.

54.     Denies the allegations made in paragraph 54 of the Complaint.

## RESPONSE TO PLAINTIFF'S THIRD CAUSE
## OF ACTION AGAINST DEFENDANT

55.     In response to paragraph 55 of the Complaint, Defendant repeats and realleges all of the statements above as if fully set forth at length herein.

56.     Denies the allegations made in paragraph 56 of the Complaint.

57.     Denies the allegations made in paragraph 57 of the Complaint.

58.     Denies the allegations made in paragraph 58 of the Complaint.

## RESPONSE TO PLAINTIFF'S FOURTH CAUSE
## OF ACTION AGAINST DEFENDANT

59.     In response to paragraph 59 of the Complaint, Defendant repeats and realleges all of the statements above as if fully set forth at length herein.

60.     Denies the allegations made in paragraph 60 of the Complaint.

61.     Denies the allegations made in paragraph 61 of the Complaint.

62.     Denies the allegations made in paragraph 62 of the Complaint.

6087496v.9

## RESPONSE TO PLAINTIFF'S FIFTH CAUSE
## OF ACTION AGAINST DEFENDANT

63.      In response to paragraph 59 of the Complaint, Defendant repeats and realleges all of the statements above as if fully set forth at length herein.

64.      Denies the allegations made in paragraph 64 of the Complaint.

65.      Denies the allegations made in paragraph 65 of the Complaint.

## RESPONSE TO PLAINTIFF'S SIXTH CAUSE
## OF ACTION AGAINST DEFENDANT

66.      In response to paragraph 66 of the Complaint, Defendant repeats and realleges all of the statements above as if fully set forth at length herein.

67.      Denies the allegations made in paragraph 67 of the Complaint.

68.      Denies the allegations made in paragraph 68 of the Complaint.

## STATEMENT OF AFFIRMATIVE DEFENSES
## AND OTHER DEFENSES

69.      Defendant asserts the following affirmative and other defenses without assuming any burden of production or proof that they would not otherwise have.

## FIRST AFFIRMATIVE DEFENSE

70.      The Complaint, in whole or in part, fails to state a cause of action upon which relief may be granted because, among other reasons, Plaintiff was paid for all time worked in compliance with applicable laws.

## SECOND AFFIRMATIVE DEFENSE

71.      To the extent that the period of time alluded to in the Complaint, or the period of time alleged later in this action, predates the applicable limitations period, such claims are time-barred

by the applicable statute of limitations under applicable New York law and/or the FLSA.

### THIRD AFFIRMATIVE DEFENSE

72.     Plaintiff's claims are barred in whole or in part because actions taken in connection with Plaintiff's compensation were done in good faith in conformity with and reliance upon written administrative regulations, orders, rulings, approvals, interpretations, and written and unwritten administrative practices or enforcement policies.

### FOURTH AFFIRMATIVE DEFENSE

73.     Plaintiff's claims are barred to the extent Plaintiff failed, refused or neglected to mitigate or avoid the damages complained of in Plaintiff's Complaint.

### FIFTH AFFIRMATIVE DEFENSE

74.     All claims are barred in whole or in part to the extent that the work performed falls within exemptions, exclusions, exceptions, or credits provided for in the NYLL and the FLSA, including, but not limited to, the executive or administrative exemption, a combination of said exemptions, or any other exemption set forth in the NYLL and the FLSA.  In particular, Plaintiff's service as an office manager was exempt under applicable federal and state law.

### SEVENTH AFFIRMATIVE DEFENSE

75.     Plaintiff's claims are barred in whole or in part because any acts or omissions giving rise to this action were done in good faith and with reasonable grounds for believing that the actions or omissions were not a violation of the New York Labor Law or the Fair Labor Standards Act, and Defendant asserts a lack of willfulness or intent to violate the NYLL or the FLSA as a defense to any claim by Plaintiff for liquidated damages or related to the applicable statute of limitations.

### EIGHTH AFFIRMATIVE DEFENSE

76.     To the extent that Plaintiff or any potential class plaintiffs executed an agreement

releasing claims against Defendant, and/or received monetary compensation in exchange for releasing such claims, Defendant is entitled to a set-off in the amount of said consideration with regard to instant claims against Defendant.

77.     Defendant is also entitled to set-off for any amounts of overpayments made to Plaintiff, including overpayments for hours Plaintiff did not work, but falsely submitted as worked and for wages.

## NINTH AFFIRMATIVE DEFENSE

78.     Plaintiff's claims are barred by the doctrines of waiver, estoppel, unclean hands and laches.

## TENTH AFFIRMATIVE DEFENSE

79.     Even if Defendant has, in fact, failed to pay Plaintiff for any of the activities alleged in Plaintiff's Complaint, such activities do not constitute compensable work under the NYLL NYLL or the FLSA and furthermore, such activities were not an integral and indispensable part of Plaintiff's principal activities of employment and are not compensable.

## ELEVENTH AFFIRMATIVE DEFENSE

80.     Plaintiff's claims are barred in whole or in part by the doctrine of *de minimis non curat lex.*

## TWELFTH AFFIRMATIVE DEFENSE

81.     Assuming *arguendo* that Defendant violated any provision of the NYLL or the FLSA, such violation was not pursuant to a uniform policy or plan and no basis for a class action exists.

## THIRTEENTH AFFIRMATIVE DEFENSE

82.     Plaintiff is not entitled to class certification because Plaintiff fails to meet the requirements set forth in Section 216(b) of the U.S.C. and applicable case law, including without limitation there is no ascertainable class based on typicality of claims, numerosity of class

-8-

members, adequacy, superiority, or predominance of common questions.

### FOURTEENTH AFFIRMATIVE DEFENSE

83.     The relief sought in the Complaint is barred, in whole or in part, because Plaintiff is estopped by her own conduct from claiming any damages or any other relief against Defendant.

### FIFTEENTH AFFIRMATIVE DEFENSE

84.     Plaintiff's claims are barred in whole or in part by her disloyalty to Dr. Zahedi including without limitation, not scheduling patients, mistreating patients, and causing Dr. Zahedi to loss revenue and income from patients.  As a result, Dr. Zahedi is entitled to set off in amounts paid to Plaintiff during times in which she was a disloyal employee under the faithless servant doctrine.

85.     Defendant reserves the right to assert additional defenses or claims which may become known during the course of discovery.

### COUNTERCLAIMS

Tooraj Zahedi M.D. ("Dr. Zahedi") for his counterclaims against Plaintiff Janina Suarez states as follows:

86.     Dr. Zahedi brings these counterclaims – which counterclaims directly are related to Plaintiff's overtime claims alleged (see Complaint at ¶¶ 18-33) – against Plaintiff to recover damages caused by Plaintiff's failure to faithfully and loyally perform her duties and responsibilities for Dr. Zahedi's medical practice and based on Plaintiff's improper recording of hours she falsely submitted for wage payments.

87.     As a direct result of Plaintiff's conduct, Dr. Zahedi has suffered substantial harm and damages in an amount to be determined at trial, but not less than $100,000.00.

## JURISDICTION AND VENUE

88.     This Court has subject matter jurisdiction over the counterclaims under Fed.R.Civ.P. 13.

89.     This Court also has subject matter jurisdiction over the counterclaims stated herein under U.S.C. §1367, as the counterclaims arise out of the same facts, circumstances, and occurrences of the claims asserted by Plaintiff in the Complaint.

90.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial portion of the relevant events or omissions giving rise to the claims occurred in this district. Plaintiff was employed by Dr. Zahedi in this district.

### The Parties

91.     Upon information and belief, Plaintiff is a resident of the State of New York, Queens County.

92.     Dr. Zahedi is a physician duly licensed to practice medicine in the State of New York.

93.     Dr. Zahedi operates, and at all times relevant, operated, two medical offices, one located in the County of Queens, State of New York, and the other in the County of Kings, State of New York.

### Plaintiff's Employment with Dr. Zahedi

94.     In or about December 20, 2012, Dr. Zahedi hired Plaintiff to work as a medical assistant, at an hourly rate of approximately $10.

95.     In this role, Plaintiff's duties included, but were not limited to, answering the phone,

-10-

6087496v.9

scheduling patient appointments, verifying patient insurance, and managing lab and other patient test results.

96.     In or around August 11, 2014, Plaintiff requested, and was permitted, to stop working full time and work only one day every other week.

97.     During this time, Plaintiff was paid an hourly rate of approximately $12.

98.     In or around July 2016, Plaintiff resumed full-time employment with Dr. Zahedi and was paid an hourly rate of approximately $17.

99.     In or around January 2019, Plaintiff was promoted to office manager and was paid an hourly rate of approximately $22.

100.     In her role as office manager, Plaintiff assumed a wide array of new duties that included, but were not limited to, supervision of at least three other medical assistants, delegation of duties, coordination with insurance providers regarding services rendered, and management of inventory.

101.     In or around January 2020, Plaintiff received a raise to an hourly rate of approximately $23.

102.     Given the substantial trust Dr. Zahedi placed in Plaintiff, Dr. Zahedi also granted Plaintiff the authority to hire and fire subordinate employees.

103.     As the office manager, Plaintiff was scheduled to work Monday through Friday from 9:00am to 5:00pm, with a paid 30 minute meal break each day, and at least one Saturday a month from 9:00am to 3:00pm.

-11-

104.     Plaintiff was compensated at an hourly rate.

105.     Plaintiff was compensated on a bi-weekly basis.

106.     Plaintiff was compensated for each of the hours that she reported that she worked via Dr. Zahedi's payroll system.

107.     Plaintiff generally worked 40 hours or less per week.

108.     As an hourly employee, Plaintiff was expected to clock in when performing her job duties and clock out when taking a meal break, or leaving work.

109.     Dr. Zahedi paid Plaintiff, if applicable, an annual discretionary bonus equal to forty hours of pay.

110.     Throughout her employment with Dr. Zahedi, Plaintiff's bonus payments were as follows: December 2013, $500; December 2014, $150; December 2015, $100; December 2016, $680; December 2018, $720; December 2019, $880; December 2020, $920.

**The Medical Practice's Payroll System And Plaintiff's Misuse Of The System**

111.     Prior to February 2018, Dr. Zahedi utilized a fingerprint verification system through Automatic Data Processing, Inc. ("ADP") to track employee hours worked, for payroll purposes.

112.     This system required employees to clock in and out utilizing their fingerprints.

113.     As a result of the fingerprint system, an employee would have to be physically present to clock in or out for payroll purposes.

114.     In or around February 2018, at Plaintiff's suggestion, Dr. Zahedi replaced the

-12-

fingerprint verification system with a system that permitted employees to clock in and clock out on their computers ("Computer System"), for payroll purposes.

115.    It was later discovered that, in or around July 2018, as reported by other employees, that Plaintiff was improperly clocking in and out using the Computer System and inflating her hours.

116.    Plaintiff had another employee clock in for her on days before Plaintiff was actually in the office providing services for Dr. Zahedi.

117.    Plaintiff had another employee clock out for her after Plaintiff had already left work for the day.

118.    Upon information and belief, Plaintiff misreported at least 2 to 3 hours actually worked per week by falsifying time records.  Some weeks more, some weeks less.

119.    In or around July 2018, due to, among other things, Plaintiff's pattern of inflating the hours she reported, Dr. Zahedi decided to revert back to the fingerprint system.

120.    Despite this decision, Plaintiff resisted implementation of the fingerprint system and delayed the implementation of the fingerprint system by at least a month.

121.    Upon information and belief, Plaintiff provided multiple excuses to deter the implementation of the fingerprint system.

122.    Upon information and belief, Plaintiff lied to Dr. Zahedi and falsely stated that the fingerprint system was installed.

123.    Once the fingerprint system was successfully re-implemented, upon information

and belief, Plaintiff then impersonated Dr. Zahedi's payroll manager and called ADP to request that ADP permit clocking in and out by dialing in.

124.    Upon information and belief, dialing in permitted Plaintiff to clock in and clock out without using her fingerprints.

125.    Upon information and belief, Plaintiff continued this practice of inflating her hours on the fingerprint system from August 2018 until January 2019.

126.    In or around January 2019, Dr. Zahedi implemented a password into the fingerprint system to ensure employees could clock in and clock out using only their fingerprints.

127.    Despite implementation of the password in 2019, upon information and belief, Plaintiff was still able to clock in and clock out and bypass the fingerprint requirement.

128.    Plaintiff's misrepresentation of hours worked using Dr. Zehedi's payroll system took place between 2018 and 2019 when Dr. Zahedi was not using the fingerprint system for employee identification.

129.    By having other employees assist her, Plaintiff's misrepresentation of hours worked continued in 2020 as well.

**Plaintiff's Employment Is Terminated For Misconduct**

130.    In or around January 2021, Plaintiff was terminated for, among other things: (1) directing employees to ignore incoming calls from patients during business hours; (2) watching Hulu and/or Netflix during business hours; (3) leaving work during business hours without clocking out and seeking wage payments for time not attending to Dr. Zahedi's practice or performing her duties and responsibilities; (4) directing employees to refrain from scheduling

patients past a certain time, but within business hours; (5) stealing time by receiving payment for hours not worked, and taking personal calls; and (6) taking personal video calls during work hours, while clocked in.

131.    During her shift, and when clocked in to the payroll system, Plaintiff would watch Hulu and/or Netflix rather than perform her duties.

132.    Plaintiff would often refrain from clocking out when leaving the office for an indeterminate period of time to engage in activities unrelated to work.

133.    From June 1, 2020 until the date of her termination, Plaintiff would participate in a non-work related video call for at least one hour a day, while clocked in.

134.    These non-work related video calls occurred at 9:00 am until 10:00 am.

135.    Plaintiff did not have permission from Dr. Zahedi to perform this personal task on company time.

136.    Based on Plaintiff's actions of not clocking out during a personal video conference, Plaintiff was overpaid at least 5 hours per week between June 2020 and her termination of employment.

137.    Plaintiff recruited another employee to assist in defrauding Dr. Zahedi by having the other employee clock in on Plaintiff's behalf during times Plaintiff was not actually working.

138.    On the days that Plaintiff would either come in to work late or leave work early, Plaintiff would clock in for a full eight-hour shift, despite not working the full shift.

139.    Plaintiff would direct her subordinates to refrain from scheduling patients past a

-15-

certain time—without Dr. Zahedi's consent—in order to allow Plaintiff to leave earlier than her scheduled departure time.

140. On Fridays, Plaintiff would direct other employees to turn off the lights, ignore incoming calls and silence the phones so that she could watch Hulu and/or Netflix on the office television while she was clocked in.

141. At least one employee personally witnessed Plaintiff watch Hulu and/or Netflix every Friday during work hours.

142. This employee witnessed Plaintiff watch Hulu and/or Netflix every Friday from May 2019 to October 2019.

143. During this period that Plaintiff was watching Hulu and/or Netflix, Plaintiff was clocked in and reported at least 7 hours as time she worked.

144. Dr. Zahedi compensated Plaintiff for these reported hours despite the fact that Plaintiff was not rendering any services for the benefit of Dr. Zahedi and/or the Practice.

145. In addition to the period in ¶142, upon information and belief, Plaintiff's practice of turning off the lights and watching Hulu and/or Netflix also took place from June 1, 2020 to January 1, 2021.

146. Based on Plaintiff's actions of watching Hulu and/or Netflix all day every Friday, Plaintiff was overpaid for at least 7 hours every week May 2019 until the date of her termination.

147. Plaintiff routinely neglected patients by ignoring incoming patient calls or failing to return patient calls, which led to an increase in patient dissatisfaction.

148.   Plaintiff abused her position as office manager by directing her subordinates to neglect patients, which led to an increase in patient dissatisfaction.

149.   As a result of Plaintiff's actions, numerous patients negatively reviewed Dr. Zahedi's practice on various websites and social media forums.

150.   These negative reviews complained of, among other things, extended wait times, unanswered phone calls, and failure to return patient phone calls.

151.   It has also been discovered that Plaintiff also engaged in other activity that was in violation of Dr. Zahedi's office policy and procedures.

152.   The above improper activity, including misrepresentations of hours spent actually performing services for Dr. Zahedi or falsifying time records occurred, for the most part, on days when Dr. Zahedi was not physically present in the office.

153.   Many of the actions reported above have only come to light since Plaintiff's termination from Dr. Zahedi's medical practice.

## **FIRST COUNTERCLAIM**

154.    Dr. Zahedi repeats and realleges each and every allegation contained above, as if fully set forth at length herein.

155.   By falsely and knowingly clocking in to Dr. Zahedi's payroll system when Plaintiff was not working, Plaintiff materially misrepresented the hours that she sought to be paid for on an hourly basis.

156.   Plaintiff knew that the hours she submitted as hours worked, and for compensation,

was false at the time she submitted the hours for payment.

157.    Plaintiff misreported hours worked between 2018 and 2019, during the time period when Dr. Zahedi was not using the fingerprint recording system for tracking employee's hours.

158.    Plaintiff further misreported her hours worked in 2019 and into early 2020, after Dr. Zahedi changed the payroll management system back to fingerprint clock in/out for employees, by accessing the payroll system and using a password obtained from the payroll company to bypass the fingerprint system.

159.    Plaintiff further misreported hours worked in 2019 and through 2020 by having other employee's clock in or out for her during her shifts.

160.    Plaintiff also falsely reported her hours worked between June 2020 and the date of her termination when she failed to clock out of the payroll system during online videos that Plaintiff participated in daily from 9:00 a.m. to 10:00 a.m.

161.    Plaintiff intentionally falsified her hours worked using one of the four methods above between 2018 and the date of her termination.

162.    Upon information and belief, Plaintiff used other, undiscovered, methods of intentionally falsifying her time worked prior to 2018.

163.    Plaintiff intentionally misrepresented to Dr. Zahedi that she was providing services to Dr. Zahedi and his patients when she was either not physically in the office, not providing services, watching Hulu and/or Netflix, or taking personal video conference calls.

164.    Dr. Zahedi relied on Plaintiff's submitted hours worked and hours for which

-18-

Plaintiff clocked in to work or had co-workers clock her in to work and remitted wage payments to Plaintiff based on those representations of alleged hours worked.

165.    It was reasonable for Dr. Zahedi to rely on Plaintiff's payroll submissions as Plaintiff was trusted and the office manager of Dr. Zahedi's medical practice.

166.    As a result of Plaintiff's intentional misrepresentations, Dr. Zahedi was damaged in making wage payments to Plaintiff for hours in which Plaintiff did not provide services for the benefit of Dr. Zahedi or his practice, including hours spent by Plaintiff not working, watching Hulu/Netflix or other online programs, participating in video conferences, or when Plaintiff has left the office.

167.    Based on the foregoing, Plaintiff is entitled to an award of damages equal to the wages paid to Plaintiff for hours that Plaintiff did not actually provide services to Dr. Zahedi, but for which Plaintiff was compensated, in an amount not less than $100,000.

## AS AND FOR A SECOND COUNTERCLAIM

168.    Dr. Zahedi repeats and realleges each and every allegation contained above, as if fully set forth at length herein.

169.    As an employee of Dr. Zahedi, Plaintiff owed duties of good faith and undivided loyalty to Dr. Zahedi under New York faithless servant doctrine.

170.    In accordance with such duties, Plaintiff was obligated to refrain from engaging in activities which would adversely affect Dr. Zahedi's ability to serve the practice's patients and obtain payment for such services.

171.    Plaintiff engaged in activities during company time that were in furtherance of her

-19-

own benefit, and adverse to Dr. Zahedi's ability to service his patients.

172.     As part of her duties, Plaintiff was expected to schedule patients for appointments, answer phone calls, and supervise the staff during business hours.

173.     These duties were to be performed by Plaintiff for the benefit of Dr. Zahedi and his medical practice.

174.     Plaintiff's disloyalty, dishonesty, fraud, and faithlessness manifested in several ways, including but not limited to: (1) directing employees to ignore incoming calls from patients during business hours; (2) watching Hulu/Netflix or other online programming during business hours; (3) leaving work during business hours and seeking payment for wages related to those times when she was not actually providing services for the benefit of Dr. Zahedi's medical practice; (4) directing employees to refrain from scheduling patients past a certain time that were within business hours; (5) stealing time by receiving payment for hours not worked; and (6) conducting personal video calls during work hours while clocked in and receiving payment for hours allegedly worked.

175.     As a direct result of Plaintiff's deliberate and willful practice of stealing time by, among other things, falsely clocking in for pay when not working or not present in the office, Plaintiff fraudulently induced Dr. Zahedi to remit compensation to Plaintiff for services she never rendered.

176.     Plaintiff carried out this practice of stealing time without Dr. Zahedi 's knowledge or consent.

177.     Based on the foregoing breaches of Plaintiff's duties of good faith and loyalty to

Dr. Zahedi, Dr. Zahedi is entitled to the application of the faithless servant doctrine, under which the Dr. Zahedi is entitled to recover all compensation that was paid to Plaintiff during the period of her disloyalty, in an amount to be determined at trial.

## AS AND FOR A THIRD COUNTERCLAIM

178.    Dr. Zahedi repeats and realleges each and every allegation contained above, as if fully set forth at length herein.

179.    As a direct result of Plaintiff's employment with Dr. Zahedi, Plaintiff received the benefit of hourly compensation in exchange for services.

180.    Plaintiff would regularly engage in the practice of clocking in to the Practices' payroll systems to obtain wage payments for hours and time that Plaintiff was not working on Dr. Zahedi's behalf.

181.    Plaintiff engaged in this practice of submitted hours for wage payments without Dr. Zahedi's knowledge or consent.

182.    Plaintiff would clock in and, rather than perform her job duties, Plaintiff would engage in activities that were unrelated to her job, such as watching Netflix and participating in non-work related video calls.

183.    Plaintiff would either leave work early or arrive to work late, but remain clocked in for those hours spent out of the office and not performing duties on behalf of Dr. Zahedi.

184.    The amount of hours Plaintiff reported, for purposes of calculating her wages, exceeded the number of hours she actually worked.

185.   Plaintiff received compensation for work she did not perform.

186.   As such, Plaintiff is not, and was not, entitled to the sums of money received from Dr. Zahedi.

187.   Plaintiff received this compensation at the expense of Dr. Zahedi.

188.   Allowing Plaintiff to retain the compensation she received for services not rendered would be manifestly unjust.

**WHEREFORE,** Dr. Zahedi respectfully requests that the Court issue judgment as follows:

(a)   dismiss Plaintiff's Complaint in its entirety, with prejudice;

(b)   deny each and every demand, claim and prayer for relief contained in Plaintiff's Complaint;

(c)   award to Dr. Zahedi reimbursement for their costs, including attorneys' fees; and,

(d)   On the First Counterclaim, an award of damages equal to the compensation earned by Plaintiff during the period of time in which she was a disloyal employee;

(e)   On the Second Counterclaim, an award of damages to Dr. Zahedi in an amount to be determined at trial, but not less than $100,000;

(f)   On the Third Counterclaim, an award of damages to Dr. Zahedi in an amount to be determined at trial, but not less than $100,000

(g)   grant such other and further relief as the Court deems just and proper.

Pursuant to Federal Rule of Civil Procedure 38, Dr. Zahedi hereby demands a jury trial on any and all issues triable as of right by a jury.

Dated:  Great Neck, New York
         June 2, 2021

                      GARFUNKEL WILD, P.C.
                      *Attorneys for Defendant*

6087496v.9

By: _/s/ Salvatore Puccio_
Salvatore Puccio, Esq.
Marky A. Suazo, Esq.
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200

TO:  Arthur H. Forman, Esq.
Law Office of Arthur H. Forman, P.C.
*Attorneys for Plaintiff*
90-20 Metropolitan Avenue
Forest Hills, NY 11375

6087496v.9